IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RICHARD GENE GUY,

        Plaintiff,

vs.                                              CIVIL NO.  08-347 WFD/LFG

DONALD DUNN, Deputy
United States Marshal,

        Defendant.

## REPORT AND RECOMMENDATION[1] PROPOSING TO GRANT DEFENDANT DUNN'S MOTION TO DISMISS

### Introduction

THIS MATTER is before the Court on Defendant Donald Dunn's ("Dunn") Motion to Dismiss Plaintiff's Complaint [Doc. Nos. 55, 56].[2] Plaintiff Richard Gene Guy ("Guy") failed to respond to the motion, and the time for filing a response elapsed. Guy did not seek or obtain any extension of time within which to file his response in opposition.

Pursuant to the district's local rule, D.N.M.LR-Civ. 7.1(b), the failure to file a response in opposition to a motion constitutes consent to grant the motion. However, the Tenth Circuit previously instructed that granting a motion for summary judgment simply because the party opposing the motion failed to respond would constitute a sanction, and, therefore, should not be used

---

[1]**Within ten (10) days after a party is served with a copy of this report and recommendation, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to the report and recommendation. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the report and recommendation. If no objections are filed, no appellate review will be allowed.**

[2]This Report and Recommendation is made pursuant to an Order of Reference. [Doc. 51.]

as the basis to grant the motion. Reed v. Bennett, 312 F.3d 1190, 1195 (10th Cir. 2002). Therefore, notwithstanding Guy's presumed consent to grant the motion due his failure to contest it, the Court will not grant the motion on that basis alone. Rather, the Court reviews the motion on the merits. In so doing, the Court accepts as true all material facts asserted and properly supported in Dunn's motion, as Guy did not controvert those facts. *See* id. (referring to a summary judgment motion).

## Undisputed Facts

Guy was indicted by a State grand jury in Las Cruces, New Mexico on seven counts of tax evasion and ten counts of fraud. The Indictment was returned on March 17, 2005, and a warrant for Guy's arrest was issued on April 6, 2005. (Doc. 56, Statement of Material Facts, ¶ 1.) Guy left the United States and secured work in Kuwait, working for a contractor involved in supporting the United States military in the Middle East. (Doc. 56, Statement of Material Facts, ¶ 2.)

On April 13, 2005, the State of New Mexico sought the assistance of the United States Marshal Service ("USMS") in Las Cruces in apprehending Guy so that he could face trial in New Mexico. (Doc. 56, Statement of Material Facts, ¶ 2; Attachment 1, Donald Dunn Affidavit, ¶ 2.)

During the course of its efforts to locate Guy, the USMS learned that Guy was in the Middle East, and through the American Embassy in Kuwait, the USMS discovered Guy was Kuwait City. (Doc. 56, Statement of Material Facts, ¶ 2; Dunn Affidavit, ¶¶ 3, 4).

Upon learning of the outstanding Indictment and warrant for Guy's arrest, the American Embassy confiscated Guy's Passport. (Doc. 56, Statement of Material Facts, ¶ 2 Dunn Aff., ¶ 4.)

In February 2007, the USMS learned that Guy was under investigation by the United States Army Criminal Investigation Division ("CID") as well as by Kuwaiti officials, including the Kuwaiti Minister of the Interior ("KMI") concerning issues related to fraudulent contractor "badging" requirements. (Dunn Aff., ¶ 5).

The KMI determined that Guy was in violation of Kuwaiti immigration law and would be deported. He was taken into custody in Kuwait by Kuwaiti officials, not by U.S. Marshals, and placed in a Kuwait detention facility. (Doc. 56, Statement of Material Facts, ¶ 4; Dunn Aff., ¶ 6.)

Based on Dunn's knowledge and review, there is no extradition treaty or process between the United States and Kuwait. Neither Dunn nor his office were involved in the arrest of Guy. (Dunn Aff., ¶ 6.)

Kuwaiti officials, specifically KMI, determined that Guy should be deported from Kuwait. Guy was not extradited; he was deported by the government of Kuwait. (Dunn Aff., ¶ 6.)

KMI and Kuwait airport police placed Guy on a United Airlines flight from Kuwait to Dulles Airport. Dunn and another Deputy Marshal [Richard J. Hoyle] ("Hoyle") met KMI officials and airport police at the Kuwait airport and escorted Guy out of Kuwait. (Dunn Aff., ¶ 8). Neither Dunn nor Hoyle were armed. While they had temporary restraints on their person, at no time was Guy handcuffed or restrained. On the return flight, Guy did not appear ill nor did he complain of being ill. Indeed, his only complaint related to cramping in his knees due to the sixteen-hour flight. (Dunn Aff., ¶¶ 8, 9.)

Hoyle sat next to Guy on the return flight and stated Guy spoke to him "extensively." Hoyle asked how Guy was doing several times and Guy said he was alright. Guy never complained of feeling sick, but did complain that his knee hurt due to the long flight and cramped seating. (Doc. 56, Attachment 2, Richard J. Doyle Affidavit, ¶ 3, 4.) Guy "ate, slept, watched the flight movies, talked to me, and said the charges in New Mexico were bogus." (Id., ¶4.) Hoyle did not observe any expression of pain on Guy's face during the flight, nor did he hear him complain of any problems other than the knee ache. Hoyle never witnessed Guy exhibiting would might appear to be chest pain or any other illness. (Hoyle Aff., ¶ 5.)

3

Upon arrival at Dulles Airport, Guy was met by two Virginia-based Deputy United States Marshals who took him to the nearest state facility in Loudoun County, Virginia, where Guy was booked on the New Mexico warrant. (Dunn Aff., ¶ 10.) Virginia state booking documents, affirmed by Guy's signature, do not indicate that Guy had any medical condition requiring immediate attention. (Id.).

As earlier noted, since Guy has not submitted counter affidavits nor any evidence to challenge the factual assertions, these assertions are taken as true for purposes of the Court's analysis. Reed, 312 F.3d at 1195.

### Dunn's Motion to Dismiss Based on Qualified Immunity

Dunn captions his motion as one for dismissal based on qualified immunity. However, he sets forth the summary judgment standard under Fed. R. Civ. P. 56. [Doc. 56, p. 14.] Moreover, in ruling on the motion to dismiss, the Court relied on affidavit statements by Dunn and Hoyle and other exhibits attached to the motion. Thus, the Court converts the motion to dismiss to a motion for summary judgment. *See* Lowe v. Town of Fairland, Okl., 143 F.3d 1378, 1381 (10th Cir. 1998) (motion to dismiss must be converted into a motion for summary judgment whenever the district court considers matters outside the pleadings.)

Summary judgment is appropriate where the movant demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also* Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir.1995) ("Summary judgment is proper only if the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'") (internal quotations omitted). Summary judgment is "properly regarded not

4

as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (*quoting* Fed. R. Civ. P. 1).

If Defendant meets his burden in showing an absence of evidence to support the nonmovant's case, the plaintiff must "identify specific facts that show the existence of a genuine issue of material fact. Muñoz v. St. Mary-Corwin Hosp. 221 F.3d 1160, 1164 (10th Cir. 2000) (internal citation omitted). "The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor." Id. (internal citations omitted). The nonmoving party must "go beyond the pleadings and by her own affidavits, . . . designate specific facts showing there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324 (internal quotations omitted).

Qualified immunity recognizes the legitimate need "to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982) (internal quotation omitted). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

"When a defendant raises the qualified immunity defense on summary judgment, the burden shifts to the plaintiff to meet a strict two-part test." Nelson v. McMullen, 207 F.3d 1202, 1206 (10th Cir. 2000). The plaintiff must show (1) that the defendant violated a constitutional or statutory right, and (2) that this right was clearly established at the time of the defendant's conduct. Id.; Gross v. Pirtle, 245 F.3d 1151, 1155-56 (10th Cir. 2001). The Court reviews the evidence in the light most favorable to the nonmoving party, but the record must clearly demonstrate the plaintiff satisfied his heavy two-part burden. Otherwise, the defendant will be granted qualified immunity. Id.

5

In <u>Pearson v. Callahan</u>, ---U.S. ----, 129 S.Ct. 808, 815-16, 818, 821 (2009), the United States Supreme Court held that the court has discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." (*citing* <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001)). If the Court determines that the defendant did not violate a constitutional right, there is no need to address whether the right was clearly established at the time of the defendant's conduct. <u>Martinez v. Beggs</u>, 563 F.3d 1082, 1088 (10th Cir. 2009).

## **Guy's Claims Against Dunn**

In affording Guy the liberal construction given to *pro se* litigants, *see* <u>Northington v. Jackson</u>, 973 F.2d 1518, 1520-21 (10th Cir. 1992), the Court construed Guy's complaint and addendum as an attempt to assert <u>Bivens</u> claims against Dunn. [Doc. 52, p. 7.] Under <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 395-97 (1971), a party may bring an action for money damages against federal officials, who, while acting in their individual capacities, allegedly violate a person's constitutional rights.

In giving Guy's complaint and addendum the most liberal construction, he attempts to allege violations of his constitutional rights under the Fourth, Fifth, Sixth, Eighth or Fourteenth Amendments and a claim of conspiracy. [*See* Doc. 56, p. 3.] He alleges, for example, that he was illegally seized, arrested, and detained and that his health and heart condition were jeopardized by lack of medical treatment on the flight from Kuwait to the United States. [Doc. Nos. 1, 5.]

More specific to Dunn, Guy contends, at most, that Dunn participated in a conspiracy to "illegally arrest" and "illegally extradite" him. He asserts that Dunn took him on a sixteen-hour flight to the United States without heart medicine. Since the Complaint makes no mention of any

6

deprivation of a property right by Dunn, it appears that the Fourth Amendment allegation is based on an unreasonable seizure or arrest.

### I.        FOURTH AMENDMENT CLAIM

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." United States v. Mendenhall, 446 U.S. 544, 550, *reh'g denied*, 448 U.S. 908 (1980).  Under the Fourth Amendment, an investigative detention must be supported by a reasonable suspicion of criminal activity.  An arrest, which is the most intrusive Fourth Amendment seizure, is reasonable only if supported by probable cause.  *See* United States v. Lopez, 443 F.3d 1280, 1283 (10th Cir. 2006) (identifying three categories of police-citizen encounters).

Here, Guy summarily argues that Dunn participated in a conspiracy to illegally arrest him and illegally extradite him from Kuwait to the United States.  His complaints may be read to allege that Dunn illegally arrested him either at the Kuwait airport or during the flight from Kuwait to the United States.

There is no dispute that Dunn and another U.S. Marshall met Guy in Kuwait and accompanied him on the flight from Kuwait to the United States.  Whether considered a seizure, detention, or arrest, it does not appear that Guy felt free to leave, to the extent that he could have left the company of the deputy marshals on the flight.  Moreover, immediately upon touching down in the United States at Dulles airport, Guy was met and taken by other United States Marshals and booked into the nearest state facility under a New Mexico arrest warrant.

Dunn does not expressly deny that Guy was under arrest during the flight.  He states merely that the deputy marshals were unarmed and did not use temporary restraints on Guy during the

7

flight. In other words, Guy was not handcuffed. However, if he used the restroom, Guy was accompanied to the door of the restroom by a marshal.

Under these facts, at a minimum, Guy was most likely considered "detained." However, Dunn provided admissible evidence that neither the USMS nor the United States extradited Guy from Kuwait. The uncontradicted evidence is that Kuwaiti officials determined that Guy violated Kuwaiti immigration law; Kuwaiti officials took Guy into custody; and Kuwaiti officials placed him in a Kuwaiti detention facility before deporting him.

After being advised of his arrest in Kuwait, the USMS coordinated with the KMI through the Army CID so that Guy could be returned to New Mexico upon his deportation to Kuwait, to face trial in accordance with his indictment and the open warrant for his arrest. [Doc. 56, Ex. A, B, Arrest Warrant and Indictment.] Kuwaiti officials then deported him. U.S. Marshals met Guy at the Kuwait airport and escorted him to the United States.

Even if considered to have been arrested by Dunn, there was probable cause for Guy's arrest. This was, after all, not a warrantless arrest. The Warrant for Arrest issued by the New Mexico State court is directed "to any officer, authorized to execute this Warrant:

> Based on a finding of probable cause, you are hereby commanded to arrest Richard Gene Guy, 1265 Applebrook, Bartlett, Tennessee 38134 and bring him forthwith before this court to answer to the charges of attempts to evade or defeat tax (seven counts) or in the alternative, false statements and fraud (seven counts), fraud (over $20,000)(three counts), fraud (over $2,500)(seven counts), contrary sections 07-01-72, 07-01-73, 30-16-06, NMSA 1978, as more particularly set forth in the Indictment filed herein . . . .

Dunn is an authorized law enforcement officer. There is no dispute he was acting in the course and scope of his responsibilities as a Deputy United States Marshal, as the Marshal's Service was asked to assist the State of New Mexico in executing this warrant, and the Marshal's

investigation determined that Guy was Kuwait. Thus, any arrest, whether it occurred at the Kuwait airport, on the plane, or at the Dulles Airport in Virginia, was a lawful arrest.

Moreover, federal law provides authority to escort an individual who is "delivered by any foreign government to an agent of the United States, for the purpose of being brought within the United States and tried for any offense of which is duly accused . . . ." 18 U.S.C. § 3192.

Guy failed to raise a genuine issue of material fact that his Fourth Amendment rights were violated. Even if arrested, the arrest was lawful and supported by probable cause. Guy did not provide any evidence to the contrary or show that Dunn violated his constitutional rights. Thus, the Court recommends that Dunn be granted qualified immunity on the Fourth Amendment claim as to any seizure, detention or arrest that occurred.

**II.     FIFTH AMENDMENT CLAIM**

While Guy may have asserted a Fifth Amendment right, there is no allegation that the United States or Dunn removed property from Guy without just compensation. Indeed, the only seizure is Guy's arrest itself. Guy's Complaint fails to state any Fifth Amendment violation against Dunn, and the Court recommends that the claim be dismissed.

**III.    SIXTH AMENDMENT CLAIM**

So, too, Guy's allegation of a Sixth Amendment right is without factual support or legal substance. There is no evidence or even an assertion that Guy requested legal assistance while in flight. Guy did not contend that he was subjected to any type of in-custodian interrogation, or even questioned by the USMS. Moreover, Guy does not allege that upon his arrest and prosecution on the criminal charges in the United States, he was not afforded the right to counsel. The Court recommends that the claim be dismissed.

## IV.    EIGHTH/FOURTEENTH AMENDMENT CLAIM[3]

It is well-settled that the Eighth Amendment governs alleged ***post-conviction*** constitutional violations asserted by inmates during the course of their incarceration.  Whitley v. Albers, 475 U.S. 312, 327 (1986) (Eighth Amendment "serves as the primary source of substantive protection to convicted prisoners ... where the deliberate use of force is challenged as excessive and unjustified."). At the time Guy alleges he was denied reasonable medical treatment, he was not convicted.  Instead, Guy alleges that Dunn did not provide him with appropriate medical care during the flight from Kuwait to the United States, notwithstanding Guy's request for medication due to his heart condition.  Although Guy was not yet convicted, a pretrial detainee is also entitled to reasonable medical care.

"The constitutional protection against deliberate indifference to a prisoner's serious medical need, as announced in Estelle ..., applies to pretrial detainees through the due process clause of the Fourteenth Amendment."  Howard v. Dickerson, 34 F.3d 978, 980 (10th Cir. 1994).  *See also* Lopez v. LeMaster, 172 F.3d 756, 759 n. 2 (10th Cir. 1999) (Although pretrial detainees are protected under the Due Process Clause rather than the Eighth Amendment, the Court applies an analysis identical to that applied in Eighth Amendment).  It is clearly established that pretrial detainees enjoy the same protection from deliberate indifference to serious medical needs as do convicted inmates. Howard, 34 F.3d at 980. (internal citation omitted).

The Court must examine Guy's inadequate medical treatment against the "deliberate indifference to serious medical needs" test of Estelle v. Gamble, 429 U.S. 97, 104, (1976), *reh'g*

---

[3]Although Dunn states that Fourteenth Amendment would not apply to him, as the Fourteenth Amendment prohibitions apply to state rather than federal officials, Dunn proceeds to argue at length that there is no evidence to support a Fourteenth Amendment violation by Dunn. [Doc. 56, p. 3 n. 5, pp. 13-14.]

*denied,* 429 U.S. 1066 (1977). The analysis under Estelle is two-pronged. The initial question is whether there is evidence of "serious medical needs." A constitutional violation only occurs when a government official's "deliberate indifference" is exhibited toward such needs.

Here, the unchallenged evidence is that Guy did not inform either Dunn or the other Deputy U.S. Marshal of any serious medical conditions he had or of medication he needed. Both deputy marshals provided undisputed affidavit testimony that they accompanied Guy on the flight, sat next to him, spoke to him and never heard him ask for medication or complain of his heart. Guy watched television on the plane and conversed with the marshals. Neither marshal was aware that Guy had a serious medical condition requiring medical attention. According to Deputy U.S. Marshal Hoyle, Guy was in no apparent physical pain or discomfort. He did not complain of being ill or exhibit symptoms of pain or heart problems. Upon landing in the United States, Guy was taken and booked into a Virginia detention facility. There, he signed paperwork that did not indicate he had a medical condition requiring immediate attention. Thus, there is no evidence that Dunn exhibited "deliberate indifference" to Guy's alleged medical needs.[4]

Under the circumstances, Guy fails to raise a genuine issue of material fact that Dunn violated his constitutional right to reasonable medical treatment. Therefore, the Court recommends that Dunn be granted qualified immunity on the Eighth/Fourteenth Amendment claim.

## V.   CONSPIRACY CLAIM

Guy provides no details or specifics concerning the alleged conspiracy. While the Court did, in fact, stay discovery as required by <u>Jiron v. City of Lakewood</u>, 392 F.3d 410, 414 (10th Cir. 2004), Guy still had the option of filing a Fed. R. Civ. P. 56(f) affidavit demonstrating the need to take

---

[4] In this case, Guy's claims of deliberate indifference deal primarily with conditions of the Kuwait detention facility. This occurred prior to Dunn's arrival in Kuwait.

some discovery so as to allow him to respond to the motion. *See* <u>Ben Ezra, Weinstein & Co. v. American Online, Inc.</u>, 206 F.3d 980, 987 (10th Cir.), *cert. denied*, 531 U.S. 824 (2000). Guy failed to submit a 56(f) affidavit and did not demonstrate what discovery was necessary or how that discovery would enable him to challenge Dunn's motion. Thus, the Court is left with only a summary, self-serving allegation of conspiracy, without any evidentiary support. Because there is no evidence to support a claim that Dunn conspired to arrest or extradite Guy, the Court recommends granting summary judgment in favor of Dunn.

### **Recommendation**

The Court recommends that Defendant Dunn's motion to dismiss/motion for summary judgment be granted, and more specifically, that:

(1) Defendant Dunn be granted qualified immunity as to any claims brought under the Fourth or Eighth/Fourteenth Amendments, and that those claims be dismissed, with prejudice;

(2) Defendant Dunn be granted summary judgment as to any Fifth or Sixth Amendment claims and as to the claim of conspiracy, and that those claims be dismissed, with prejudice; and

(3) that the matter be dismissed, with prejudice.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
Chief United States Magistrate Judge